UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TIMOTHY H. JOHNSON,<br><br>      Plaintiff<br><br>v.<br><br>DANA MARKS, et al.,<br><br>      Defendants | Case No.: 3:23-cv-00361-ART-CSD<br><br>**Report & Recommendation of United States Magistrate Judge**<br><br>Re: ECF Nos. 14, 15 |

This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's motion for a temporary restraining order and preliminary injunction. (ECF Nos. 14/15.)[1] Plaintiff seeks an order that he be seen by a urologist or oncologist for his bladder tumor, and by a vascular surgeon for his abdominal aortic aneurysm. On December 18, 2023, Plaintiff filed a notice that he had seen a urologist—Dr. Nixon—on December 14, 2023, who recommended surgery as soon as possible for removal of a tumor on Plaintiff's bladder. (ECF No. 32.)

After some delay, a response was filed to Plaintiff's motion. (ECF Nos. 33, 34, 35-1 to 35-8.) Plaintiff filed a reply. (ECF No. 38.) The court held a hearing on January 3, 2024, where Senior Deputy Attorney General Rands represented that the recommended surgery had been authorized and was in the process of being scheduled. (ECF No. 39.) On January 4, 2024,

---

[1] These documents are identical, but docketed separately due to the differing relief sought.

Mr. Rands filed a notice indicating that the surgery had in fact been scheduled, and the dates were filed under seal for safety and security reasons. (ECF Nos. 40, 41.)

On February 7, 2024, the court ordered Mr. Rands to file a status update. (ECF No. 45.)

On February 14, 2024, Mr. Rands filed a status update indicating Plaintiff had two surgical procedures for his bladder: a transurethral resection of bladder tumor (TURBT) on January 29, 2024, and a partial cystectomy with bladder diverticulectomy and right pelvic lymph node dissection on February 2, 2024. Plaintiff saw Dr. Nixon for a follow up appointment on February 7, 2024, and it was recommended that he see Dr. Beal, a vascular surgeon, to discuss his aneurysm. Plaintiff has another follow up scheduled Dr. Nixon, and he has been scheduled to see a vascular surgeon to evaluate his aneurysm. The dates of these appointments have been filed under seal for safety and security reasons. (ECF Nos. 47, 47-1.)

After a thorough review, it is recommended that Plaintiff's motion be denied as moot because he has now seen a urologist and had two surgical procedures to address the tumor in his bladder, as well as follow up care. In addition, he has been scheduled to see a vascular surgeon concerning his aneurysm.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Second Amended Complaint (SAC), ECF No. 13.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC).

The court screened Plaintiff's SAC and allowed him to proceed with two Eighth Amendment deliberate indifference to serious medical needs claims. The first claim is for deliberate indifference to the need to monitor and treat his abdominal aortic aneurysm, and is

proceeding against John or Jane Doe medical staff who were responsible for securing the abdominal ultrasound results. The second claim is against Dr. Marks, and John and Jane Doe Utilization Review Panel (URP) members when Plaintiff learns their identities. This claim is based on alleged deliberate indifference to the need to diagnose and treat his bladder cancer. He alleges that Dr. Marks delayed referring Plaintiff to the URP to see an oncologist (or other specialist) after cancer was detected in his urine, and the URP delayed approving the request to see an outside provider despite the fact that his symptoms had been going on for months. (ECF No. 20.)

Plaintiff filed a motion for injunctive relief seeking an order that NDOC take him to see a urologist or oncologist for his cancer, and to a vascular surgeon for his abdominal aortic aneurysm.

## II. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Injunctions and temporary restraining orders are governed procedurally by Federal Rule of Civil Procedure 65, but case law outlines the substantive requirements a party must satisfy to obtain an injunction or restraining order. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by [Rule 65] and depend[s] on traditional principles of equity jurisdiction.").

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every

case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).). The Ninth Circuit has held that "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support the issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (citation and quotation marks omitted).

The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, the PLRA limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a) therefore operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts

grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

A temporary restraining order is appropriate when irreparable injury may occur before the court can hold a hearing on a motion for preliminary injunction. *See* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999). The standard for issuing a temporary restraining order is identical to the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001); *see also* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for preliminary injunction and the proceeding is not subject to any special requirements."). A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70,* 415 U.S. 423, 439 (1974).

### III. DISCUSSION

**A. Eighth Amendment Deliberate Indifference**

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need.

*Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213.

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).

///

**B. Medical Evidence**

Plaintiff sent an emergency grievance on March 6, 2023, stating that he had blood in his urine, and the nurse refused to call the on duty doctor. He was told that he was receiving treatment and was scheduled to see Dr. Marks the following day. (ECF No. 14 at 30.)

Plaintiff was seen at Pershing General Hospital on March 7, 2023. Plaintiff was diagnosed with an asymptomatic abdominal aortic aneurysm, an acute urinary tract infection with cystitis and hematuria, as well as a mass on his liver. He was instructed to finish his antibiotic and repeat the urinalysis, and if blood remained in the urine, to follow up with a urologist. It was also recommended that he see a vascular surgeon regarding the aneurysm. (ECF No. 35-1 at 2.)

Plaintiff sent a request on March 9, 2023, requesting to be seen by a doctor. (ECF No. 14 at 32.)

Plaintiff filed an informal level grievance on April 11, 2023, requesting to be seen to discuss treatment for his aneurysm, and noting that he still had blood in his urine. (ECF No. 14 at 38-40.)

On April 20, 2023, Dr. Marks requested an abdominal ultrasound for yearly monitoring of a 4.5cm abdominal aortic aneurysm. This was authorized on May 8, 2023, and the appointment was scheduled for August 10, 2023. (ECF No. 35-6 at 2.)

On May 13, 2023, Plaintiff sent a request advising that he still had blood in his urine, and that the antibiotics he was taking were not working. (ECF No. 14 at 34.)

Lab results from May 24, 2023, state that the urinalysis was suspicious for malignancy and high-grade urothelial carcinoma. (ECF No. 35-2 at 2.)

1       On June 2, 2023, Plaintiff sent a request asking for the results from his blood draws. He was told they were working on his request. (ECF No. 14 at 36.)

      On June 14, 2023, Dr. Marks requested a referral to urology for recurrent dysuria and hematuria and urine cytology regarding the suspicion for high-grade urothelial carcinoma, as well as a CT for prostate/bladder mass/liver mass. This was authorized on June 28, 2023. (ECF No. 35-3 at 2.)

      On June 30, 2023, Plaintiff asked whether he was approved to see an oncologist and for a sonogram. (ECF No. 14 at 43.)

      Plaintiff had an abdominal ultrasound on August 10, 2023, which showed a mid-abdominal aorta measuring up to 4cm with the distal abdominal aorta measuring up to 3.9 cm. It was noted that the outside CT scan on March 7, 2023, showed the aorta measured up to 4.5 cm. (ECF No. 35-5 at 2.)

      On August 14, 2023, Plaintiff wrote to Dr. Marks that he had been taken to the hospital on August 10, 2023, for an ultrasound of a 4.5 cm abdominal aortic aneurysm, and asked to know its current size. He was told that they had not yet received the report from the radiologist, but he would be notified when it arrived. (ECF No. 14 at 51.) He asked for these results again on August 23, 2023, and September 10, 2023. (ECF No. 14 at 52-53.)

      On August 30, 2023, Dr. Marks requested a referral with Cancer Care Specialists, which was authorized on September 27, 2023, and an appointment was set for November 9, 2023. On November 8, 2023, there is a notation that Dr. Marks cancelled that appointment because Plaintiff would be transported to Northern Nevada Correctional Center (NNCC) to see a urologist. (ECF No. 35-4 at 2.) According to Dr. Marks, it was difficult to find a urology practice that would accept inmates, and so he placed Plaintiff with Cancer Care Specialists, but as that

appointment date approached, the doctor was able to find a urologist willing to see Plaintiff. Dr. Marks felt that a urologist was the proper specialist to evaluate and treat Plaintiff. (ECF No. 35-8.)

Plaintiff saw Dr. Nixon of Carson Tahoe Urology on December 14, 2023. He noted that a CT scan showed a 5cm mass behind the bladder. Plaintiff had a cystoscopy and was assessed with malignant neoplasm of the lateral wall of the urinary bladder, gross hematuria, BPH with urinary obstruction, and bladder diverticulum. Dr. Nixon recommended surgery as soon as possible to remove the tumor. (ECF No. 35-7 at 4-5.)

A CT scan of the pelvis on January 22, 2024, revealed a 2.8 cm mass in the anterolateral portion of the right posterolateral urinary bladder diverticulum, and an abdominal aortic aneurysm measuring up to 4.7 cm. (ECF No. 47-1.)

Plaintiff had his initial bladder TURBT surgery with Dr. Nixon on January 29, 2024. (*Id.*) He had the second surgical procedure (partial cystectomy with bladder diverticulectomy and right pelvic lymph node dissection) on February 2, 2024. (*Id.*) A CT scan on February 2, 2024, revealed an abdominal aortic aneurysm measuring up to 4.4 cm. (*Id.*) Plaintiff had a follow-up appointment with Dr. Nixon on February 7, 2024, where Dr. Nixon noted that Plaintiff was doing well following his surgery and he was instructed to follow up for removal of the catheter and discuss pathology. Dr. Nixon also recommended a referral to Dr. Beal, a vascular surgeon, to discuss Plaintiff's aneurysm. (*Id.*) The follow up appointment has been scheduled with Dr. Nixon, and Plaintiff has been scheduled to see a vascular surgeon to evaluate his aneurysm.

///

///

///

### C. Analysis

Plaintiff's request for injunctive relief is moot as Plaintiff has seen a urologist and received the recommended treatment and follow up care, and he is scheduled to see a vascular surgeon to evaluate his aneurysm.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motion for injunctive relief (ECF Nos. 14, 15).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: February 14, 2024

                                                Craig S. Denney
                                                United States Magistrate Judge