UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TIMOTHY H. JOHNSON,<br>Plaintiff,<br>v.<br>DANA MARKS, et al.,<br>Defendants. | Case No. 3:23-cv-00361-ART-CSD<br><br>ORDER ON REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE (ECF No. 156) AND MOTION FOR RECONSIDERATION OF MOTION FOR PRELIMINARY INJUNCTION AND RELATED MOTIONS (ECF Nos. 146, 155, 164) |

Plaintiff Timothy Johnson brings this action under 42 U.S.C. § 1983 claiming he was denied timely medical care while Plaintiff was housed at Lovelock Correctional Center.

Plaintiff's Third Amended Complaint (TAC) asserts claims of deliberate indifference to his cancer condition against Defendant Dr. Dana Marks and members of the Utilization Review Panel ("URP"). (ECF No. 153.) He also asserts claims of deliberate indifference to his aneurysm condition against John and Jane Doe Defendants at LCC. (*Id.*) Defendants' moved for summary judgment. (ECF No. 136.) After the Court denied Plaintiff's Motion for Preliminary Injunction and TRO (ECF No. 146), he filed a Motion for Reconsideration. (ECF Nos. 149, 150.) On June 3, 2026, Magistrate Judge Craig Denney issued a report and recommendation ("R&R") recommending that the Court dismiss Plaintiff's claim against John and Jane Doe Defendants at LCC and granting Defendants' Motion for Summary Judgment. (ECF No. 156.) The Court now considers Judge Denney's R&R, Defendants' Motion for Summary Judgment and Plaintiff's Motion for Reconsideration.

The Court overrules Plaintiff's objection, adopts the R&R, and dismisses Plaintiff's claim against John and Jane Doe Defendants from LCC without

prejudice.

**I. Procedural Background**

The Court screened Plaintiff's second amended complaint and allowed him to proceed with an Eighth Amendment claim for deliberate indifference to his aneurysm condition against John or Dane Doe LCC medical staff "when he learns their true names and obtains leave of Court to substitute them as defendants in this action," and an Eighth Amendment claim for indifference to his cancer condition against Dr. Dana Marks, as well as "against John and Jane Doe members of the Utilization Review Panel ("URP") when Johnson learns their true names and obtains leave of Court to substitute them as defendants in this action." (ECF No. 20 at 18.) On April 8, 2025, Plaintiff filed a Third Amended Complaint ("TAC"), which he supplemented on May 27, 2026 with names of members of the URP. (ECF No. 101, 153.) Neither the TAC nor the supplement name any additional defendants from LCC's medical staff.

**II. Factual Background**

The following facts are adopted from the TAC and R&R. Plaintiff claims that Dr. Dana Marks violated his Eighth Amendment rights by failing to properly monitor and treat his urinary condition. (ECF No. 101, 153.) On March 7, 2023, Plaintiff was seen in the emergency department of Pershing General Hospital after seeing blood in his urine. (ECF No. 153 at 9.) He was assessed with an asymptomatic abdominal aortic aneurysm ("AAA"), an acute urinary tract infection, and a mass on his liver. (ECF No. 156 at 6.) He was instructed to drink plenty of fluids, complete a course of antibiotics, and repeat the urinalysis after treatment, and it was recommended he see a vascular surgeon for the aneurysm. (*Id.*) According to Plaintiff, he submitted a kite to see Dr. Marks to establish a treatment plan following his visit on March 9, 2023. (ECF No. 153 at 10.) He saw Dr. Marks on April 18, 2023, who said he would order a blood draw screening. (*Id.*)

On May 4, 2023, Plaintiff saw a nurse during a dental appointment to whom he said that he was continuing to experience blood in his urine. (ECF No. 153 at 11.) The nurse took a urine sample and sent him back to his unit, where he was given antibiotics and ibuprofen. (*Id.*) On May 15, Plaintiff had blood in his urine again but claims he did not receive help. (*Id.* at 11-12.)

On May 24, 2023, Plaintiff provided a urine specimen and blood draw ordered by Dr. Marks. (ECF No. 153 at 12; ECF No. 138-2.) LabCorp reported the results on May 26, 2023, revealing the urine was suspicious for malignancy and high-grade urothelial carcinoma. (ECF No. 156.) Plaintiff asked about these results on June 2, 2023, and was told by Dr. Marks on June 6, 2023, that the blood test and urine sample showed signs of cancerous cells. (ECF No. 153 at 12.)

On June 12, 2023, Plaintiff filed an informal grievance pointing out that Pershing General Hospital had recommended on March 7, 2023, that he see a vascular surgeon for his aneurysm and urologist regarding the blood in his urine. (ECF No. 153 at 13.) He spoke with Director of Nursing, Erin Parks, on June 21, 2023, regarding his informal grievance, who he claims told him that it takes time to get treatment and to be patient. (*Id.* at 14.)

On June 14, 2023, Dr. Marks requested a urology consultation for Plaintiff. (ECF No. 156 at 7.) The request form indicates it was emailed to the URP on June 20, 2023, and the consultation was authorized by the URP on June 28, 2023. (*Id.* at 7-8) Plaintiff had still not heard whether the URP had approved the request on June 30, 2023, and he submitted a kite to Parks for confirmation. (ECF No. 153 at 15.)

In a declaration, Dr. Marks states that during the relevant period, it was difficult to find a urology practice for a referral, because they were refusing to accept patients from the Department of Corrections. (ECF No. 156 at 8.) He claims that he was able to schedule an appointment with Cancer Care Specialists for

November, 2023. (*Id.*) The record reflects that the appointment was scheduled for November 9, 2023, but Dr. Marks cancelled it on November 8, 2023, noting that Plaintiff was going to be transferred to Northern Nevada Correctional Center (NNCC) to see a urologist. (*Id.*) Dr. Marks states that he thought a urologist was the proper specialist to evaluate and possibly treat Plaintiff's condition. (*Id.*)

On November 22, 2023, Plaintiff was transferred to NNCC for medical care, and on December 14, 2023, Plaintiff saw Dr. Nixon at Carson Tahoe Urology. (ECF No. 153 at 17; ECF No. 156 at 8.) Dr. Nixon observed a large tumor within the diverticulum of the bladder. (ECF No. 156 at 8.) Plaintiff was assessed with malignant neoplasm of the lateral wall of the urinary bladder, gross hematuria, benign prostatic hyperplasia with urinary obstruction, and bladder diverticulum. (*Id.*) Dr. Nixon recommended surgery to remove the tumor, which he wanted scheduled as soon as possible. (*Id.*) Pathology confirmed Plaintiff had an invasive high grade urothelial carcinoma. (*Id.*)

Dr. Nixon conducted the surgery to remove the tumor on February 2, 2024. (*Id.*) Plaintiff had several follow-up appointments and was doing well. On October 16, 2025, Dr. Nixon reported that as of a cystoscopy on August 20, 2025, Plaintiff showed no signs of cancer, and a CT scan of his abdomen and pelvis on June 16, 2025, showed no kidney or ureteral abnormalities. (*Id.*)

## III. Review of Reports and Recommendations

Under the Federal Magistrates Act, a Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by [a] magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). A court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Here, because Plaintiff has objected, the Court

reviews the issues *de novo*.

## IV. Motion for Summary Judgment

### A. Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting or disputing a fact "must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable factfinder could rely to find for the nonmoving party. *Id.*

In determining summary judgment, courts apply a burden-shifting analysis. A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the nonmovant bears the burden at trial, as is the case here, the movant can meet its burden by either (1) presenting evidence to negate an essential element of the nonparty's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the non-movant will bear the burden of proof at trial. *See id.* at 323-24. After the movant has met its burden, the burden shifts to the nonmovant to come forward with specific facts showing a genuine issue of material fact remains for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although "[o]n summary judgment the inferences to be drawn from the underlying facts...must be viewed in the light most favorable to the party opposing the motion," *id.* (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)), the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586-87 (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the non-moving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Angel v. Seattle-First Nat. Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981)). Instead, to survive summary judgment, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing admissible evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

**B. Analysis**

Plaintiff objects to the R&R because he claims that he never received or did not have access to the exhibits that the magistrate judge relied upon to grant the motion. (ECF No. 157 at 7.) He argues that the delay in receiving surgery was unreasonable and deliberately indifferent to his medical needs. (*Id.*)

The government has an "obligation to provide medical care for those whom it is punishing by incarceration," and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to "serious medical needs." *Id.* at 104. This includes "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow*, 681 F.3d at 985. Defendant does not dispute that Plaintiff met the objective prong by

demonstrating that he had a serious medical need.

To satisfy the subjective standard of the second prong, a plaintiff must show “(a) purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.” *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Delay of, or interference with, medical treatment can amount to deliberate indifference. *Id*; *Clement*, 298 F.3d at 905; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002); *Lopez*, 203 F.3d at 1131; *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Hallett*, 296 F.3d at 745–46; *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

The R&R concluded that Dr. Marks was not deliberately indifferent to Plaintiff’s medical needs because he “acted promptly in requesting a urology consultation” and that any delay in scheduling an appointment with a specialist was due to difficulties with finding a urology practice that would accept inmates. (ECF No. 156 at 8, 10.) The R&R found that Plaintiff did not present any evidence to create a genuine dispute of fact concerning Dr. Marks’ statement that he could not find a urologist that would treat Plaintiff between June and November 2023. (ECF No. 156 at 10.) Plaintiff objects to this conclusion because he argues that Dr. Marks is responsible for delaying his care from March 7, 2023, until February 2, 2024, when he was able to undergo surgery by Dr. Nixon, that he did not have access to Dr. Marks’ declaration, and that it is not his burden to disprove Dr. Marks’ claims. (ECF No. 157 at 7-8.)

The Court agrees with the R&R. Once the party moving for summary judgment has met its initial burden, it shifts to the opposing party to establish that a genuine dispute of material fact actually exists. *See Celotex*, 477 U.S. at 324. Dr. Marks asserted that he was unable to schedule a urology appointment

for Plaintiff until November. Plaintiff has offered no facts or evidence to dispute that assertion nor shown that Dr. Marks purposefully failed to respond to his medical need.

Though Plaintiff states that he never received the exhibits attached to Defendants' Motion for Summary Judgment, this does not appear to have prejudiced him. Defendants argue that Plaintiff received a letter stating that he could review the exhibits attached to the Motion for Summary Judgment at the warden's office, and never contacted counsel to try to access to them. (ECF No. 161 at 3.) Plaintiff does not respond to this contention but "submits that his response to the motion for summary judgment is sufficient" to show that Defendants have not met their burden. (ECF No. 162 at 4.) In the Motion for Summary Judgment, Defendants describe the relevant substance of Dr. Marks' affidavit, including the timing and reasoning behind his scheduling, cancelling, and rescheduling Plaintiff's urology appointment. (ECF No. 136 at 3.) In his Response, Plaintiff does not dispute the factual matter of the motion but only argues that the evidence of Dr. Marks' state of mind was not properly authenticated. (ECF No. 141 at 10.) Further, the R&R laid out the same evidence, and Plaintiff still did not offer evidence to dispute Dr. Marks' claims in his objection. Thus, Defendants have met their burden to show that Dr. Marks was not deliberately indifferent to Plaintiff's medical needs when he was not able to schedule a urology appointment until November 2023.

Plaintiff has also not demonstrated that the delay in his surgery to February resulted in harm caused by Dr. Marks' alleged indifference. *See Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm)). His medical records indicate that he is doing well since the surgery, and Plaintiff does not allege that there were further complications that arose during the intervening

period that exacerbated his injuries.

As for the URP Defendants, the R&R concluded that the URP did not unreasonably delay Plaintiff's treatment because it authorized Plaintiff's consultation with a urologist eight days after receiving the request via email. (ECF No. 156 at 11.) Plaintiff does not dispute these facts. The Court agrees with the R&R's conclusion.

Finally, the R&R concluded that because Plaintiff failed to amend his complaint with the names of defendants at LCC who were responsible for delaying his care for his AAA, this claim must be dismissed without prejudice. (ECF No. 156 at 4-5.) Plaintiff does not dispute this conclusion in his objection nor his reply. Therefore, the Court agrees with the R&R's conclusion.

## V. Motion for Reconsideration (ECF No. 146)

Plaintiff moved to reconsider this Court's denial of his motion for a preliminary injunction and temporary restraining order citing medical treatment he received for his AAA since filing his TAC on August 12, 2024. (ECF No. 146 at 2.) In adopting Judge Denney's R&R, Plaintiff's claims against LCC John and Jane Doe Defendants for his AAA treatment are dismissed. Therefore, his motion for reconsideration and subsequent motions (ECF Nos. 155, 164) are denied. Should Plaintiff wish to pursue claims against the John and Jane Doe LCC Defendants, he may file a new complaint including these allegations.

## VI. Conclusion

It is therefore ordered that Plaintiff's objection to Judge Denney's Report and Recommendation (ECF No. 157) is OVERRULED.

It is further ordered that Judge Denney's Report and Recommendation (ECF No. 156) is ADOPTED IN FULL.

It is further ordered that Defendants' Motion for Summary Judgment (ECF No. 136) is GRANTED.

It is further ordered that Plaintiff's claim for medical deliberate indifference

for failure to monitor and treat his AAA against John and Jane Doe Defendants from LCC is DISMISSED WITHOUT PREJUDICE. Plaintiff may file a subsequent complaint to address this claim once he has the identities of those parties.

Dated this 27th day of August 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE